IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV169-MU-02


| | | |
|---|---|---|
| VEARL ACKERMAN, | ) | |
|     Petitioner, | ) | |
| | ) | |
|      v. | ) | ORDER |
| | ) | |
| DAVID R. MITCHELL, Supt. | ) | |
|   Of Mountain View Cor- | ) | |
|   rectional Institution, | ) | |
|     Respondent. | ) | |
| | ) | |

THIS MATTER comes before the Court on petitioner's Petition
for a Writ of Habeas Corpus under 28 U.S.C. §2254, April 9, 2004;
and on the respondent's combined "Motion for Summary Judgment And
Answer . . . ," filed July 2, 2004.  For the reasons stated
herein, the respondent's Motion for Summary Judgment will be
granted; and the petitioner's Petition will be denied and
dismissed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

According to the record of this matter, including the docu-
ments submitted by the petitioner, the petitioner was charged
with first-degree Kidnaping; first-degree Sexual Offense; Assault
with a Deadly Weapon; Assault Inflicting Serious Bodily Injury;
Assault on a Female; Injury to Personal Property; and Communicat-
ing Threats.  After entering pleas of "not guilty" to all of the
charges, the Superior Court of Mecklenburg County conducted a
jury trial of those matters.

During the trial, the prosecution presented the testimony of several witnesses, including the victim, the owner of the establishment near where the incidents had taken place, a mutual friend of the victim and the petitioner's, and the three officers who investigated the charges.  By its witnesses, the State's evidence tended to show that the victim and the petitioner had been romantically involved from April to June 1998.  During their relationship, the petitioner had been possessive and physically abusive with the victim.

After the relationship ended in June 1998, the victim and petitioner did not have contact again until September 26, 1998, when the petitioner called and invited the victim to have dinner at his home with a man and woman who were mutual friends of theirs.  The victim accepted the invitation, and had dinner with the petitioner and the couple.  Prior to the time that the victim arrived at his home, the petitioner told the couple that he was going to "beat [the victim's] ass and marry her."

Shortly thereafter, the victim arrived and joined the others in their meal.  During their meal, the petitioner invited the victim and the couple to meet him at a bar later that night to attend a band's performance.  Neither the victim nor the couple committed to the date, but the petitioner indicated that he would be attending the performance.

Also during dinner, the petitioner removed the victim's

shoes and massaged her feet. After she protested his behavior, the petitioner put the victim's shoes back on her and she continued eating. Following dinner, the couple left the petitioner's apartment. At that point, the petitioner began to kiss the victim and to make other sexual advances on her. The victim rejected the petitioner, at which point the petitioner told her to leave his home. The victim then left.

Later that night, the victim went to the bar in search of the couple. However, when she did not see the couple, the victim sat with the petitioner and drank two or three glasses of wine. At some point during that time, the victim had conversations with two other men, and went outside to talk with one of them. The petitioner went after the victim, and told her to "get [her] butt back inside." Once the victim returned to the bar, the petitioner grabbed her by her collar and scolded her for having "embarrass[ed] him."

Shortly after that, the petitioner attempted to leave the bar, but the petitioner grabbed her again, pushed her up to the bar counter, and ordered her to pay the bill. In response, the victim pulled a handful of money from her pocket, gave it to the petitioner and left the bar.

The victim then got into her rental car and attempted to leave the parking lot. However, before she could get off of the property, the petitioner dove into the car through the driver's

side window and began to violently kick the victim and the
interior of the car.  In fact, the petitioner kicked at the ig-
nition until the key broke in two; he kicked at the gear shift,
lodging it in the park position; and he kicked the victim in her
legs.  At that point, the victim made her first attempt to flee,
but the petitioner bit her arm until she let go of the door.

Thereafter, the petitioner used a full beer bottle to beat
the victim about her head, face, chest, side, knees and back.  In
addition, the petitioner held the beer bottle against the vic-
tim's throat and told her that he was "going to kill [her]".  The
petitioner also told the victim that she was going to die that
night; he choked and beat her as he told her that she was going
to die "for everything that [she had] done"; and he told her that
she would "never see [her] kids again."  At that point, the
victim made her second attempt to flee, but the petitioner re-
strained her and fought her more violently to prevent an escape.

During the attack, the victim prayed aloud and, at one
point, pretended to be unconscious in hope that the petitioner
would stop beating her.  However, when the victim slumped over as
if she had passed out, the petitioner sexually assaulted her.
Specifically, the petitioner placed his penis in the victim's
mouth and attempted to force her to perform fellatio on him.
When the victim did not perform, the petitioner struck her in her
head so hard that her hearing was still diminished at the time of

the trial.  Thereafter, the petitioner continued to choke and beat the victim, all the while telling her that he was going to beat her, cut her face up, rape her, murder her and then commit suicide.

Finally, the 45-minute attack ended when the victim ran from the car as the petitioner was readying himself to rape her.  When the victim ran from the car, the petitioner threw the beer bottle and struck her in her back.  The petitioner also continued to shout that he would kill her, and that he knew where she lived.

The victim made her way back to the bar and initially hid just in case the petitioner had followed her.  Thereafter, the victim screamed to the bar keeper that the petitioner had beaten and attempted to kill her, and she asked if someone would take her home.  By that point, the petitioner was hysterical and she looked disheveled.  The bar keeper and her husband instead called the police, and the victim called her daughter.

When members of the fire department arrived on the scene, they told the victim that she should go to the hospital for treatment; however, she instead chose to wait for police officers to arrive.  Once two police officers arrived, the victim told them about the beating and the damage to her property.  Although the victim testified that she thought she had, she did not tell the responding officers about the sexual assault.  Thereafter, the victim's daughter took her to the emergency room.  However,

after a two hour wait, the petitioner left and did not obtain treatment until she went to her own physician on the following day.

Initially, the petitioner was not charged for the sexual assault. However, after the victim learned that no such charge had been filed, she spoke with a special investigator and reported the sexual assault. After an investigation was conducted, the petitioner was charged for the sexual assault along with the other offenses.

As a result of the attack, the victim suffered bruises, bite marks, swelling and scars. In fact, the State introduced pictures of the injuries, and the victim showed the jury the bite marks which still were on her arm. In addition, the victim testified that she was receiving on-going psychological therapy to help her recover from the attack; and that she thought about the attack "everyday of [her] life and every night."

Notwithstanding the decision not to call her own witnesses, counsel for the petitioner still was able to mount a vigorous defense through her cross-examination of the State's witnesses. For instance, defense counsel attempted to cast doubt on the victim's claim that she was sexually assaulted by highlighting the fact that there had been no report of the matter until days after it allegedly had occurred. The defense also used its questions to highlight the victim's failure to tell the

responding officers that she and the petitioner previously had been romantically involved, and that she even had eaten dinner at his apartment earlier on the evening of the attack.  Defense counsel also used her questions to attack certain perceived inconsistencies between several witnesses' trial testimony and the statements which they had made to the police following the attack.

At the close of the State's evidence, the petitioner unsuccessfully sought the dismissal of all charges.  Then, after the trial Court conducted a <u>voir dire</u> of the petitioner to ensure that he understood his rights in relation to his decision not to testify, defense counsel renewed the petitioner's Motion to Dismiss all of the charges.

Relevant to this Petition, defense counsel argued that there was no evidence that the petitioner had used a deadly weapon, or that had he had inflicted serious personal injury in order to support the first-degree Sexual Offense charge.  In response, the State argued that it had, in fact, established that the petitioner's assault with a beer bottle would support a finding of guilt under the recognized theory that the he had used a weapon which the victim reasonably believed to be deadly.  Further, the State argued, in the alternative, that the evidence established that the victim had suffered serious mental injury; therefore, the charge was adequately supported.

Initially, the trial Court again denied the petitioner's Motion to Dismiss all charges, but then reconsidered the sufficiency of the evidence for the charge of Assault Inflicting Serious Bodily Injury.  At that point, the State conceded that dismissal of that charge was proper.  Accordingly, the Court dismissed the subject Assault charge.  Thereafter, the jury convicted the petitioner of the remaining charges.

Following the entry of the jury's verdicts, the Court conducted a Sentencing Hearing.  During the Hearing, the petitioner addressed the Court.  First the petitioner thanked his defense attorney for her assistance, and then he apologized "to everybody for . . . a wretched insensitive act of insensitivity and disrespect by two common drunks, between each other."

Next, the trial Court consolidated the convictions under the first-degree Sexual Offense Judgment, and imposed a single presumptive term of 307 to 378 months imprisonment.  The petitioner timely appealed his case to the North Carolina Court of Appeals.

On appeal, the petitioner raised five challenges related to the trial Court's rulings and/or conduct.  However, pertinent to his federal Petition, the petitioner argued that the trial Court had erred by instructing the jury that the first-degree Sexual Offense charge could be supported by evidence of the infliction of serious personal injury.  See North Carolina v. Ackerman, 144

N.C.App. 452, 456 (2001).[1]

Although the State appellate Court concluded that the peti-
tioner was entitled to a reversal of his Kidnaping conviction due
to an insufficiency of the evidence, the Court further concluded
that the evidence concerning the physical and mental injuries
which the victim had sustained was sufficient to support the
trial Court's instructions and the jury's conviction on the Sex-
ual Offense charge. Id. at 456-461. Nevertheless, because the
trial Court had consolidated the petitioner's convictions for
sentencing, the appellate Court remanded his case to the trial
Court for reconsideration of the sentence. Id. at 464.

However, upon reconsideration, the trial Court ultimately
concluded that the petitioner's original presumptive sentence of
307 to 378 months imprisonment should be re-imposed for the
remaining convictions. Thereafter, the petitioner unsuccessfully
sought certiorari review, thereby ending his pursuit of direct
review of his case.

Next, the petitioner returned to the Superior Court of Meck-
lenburg County with a Motion for Appropriate Relief. Relevant to
this Petition, the petitioner there argued that the trial Court's

---

[1]The other claims which the petitioner raised were that the trial Court
erred: (1) in denying his motion to dismiss the charge of first-degree
Kidnaping; (2) by denying his motion to dismiss the charge of Assault on a
Female; (3) in allowing the prosecutor to comment during his opening statement
on the petitioner's evidence; and (4) in denying the petitioner's motion to
dismiss the charge of first-degree Sexual Offense for insufficiency of the
short-form indictment. See Ackerman, 144 N.C.App. at 456.

instruction on the first-degree Sexual Offense charge was erro-
neous.  In addition to the forgoing, the petitioner raised a
number of other claims which he had neglected to raise on direct
appeal.[2]  Accordingly, the MAR Court ruled that on the allega-
tions which could be reviewed, the petitioner had failed to state
a claim for relief; and that any other potentially meritorious
claim was barred due to the petitioner's procedural default of
it.

Eventually, the petitioner came to this Court and filed the
instant federal <u>Habeas</u> Petition.  Initially, the petitioner
raised ten claims for review, but he later agreed with the State
that claims four through six were unexhausted.  Therefore, the
petitioner moved to have those matters excluded from his Petition
(<u>see</u> petitioner's Motion to Amend, document # 8).  The peti-
tioner's Motion to Amend also conceded that claim two was
unsupported; therefore, he asked to have that claim excluded.
Consequently, by Order of July 30, 2004, the undersigned dismis-
sed claims two through six from the petitioner's Petition  (<u>see</u>

---

[2]Such additional claims were that the trial Court had erred in failing
to advise the jury that one of the Assault charges had been dismissed by the
State; that his otherwise unspecified "conviction" had been obtained by use of
fabricated testimony; that the trial Court had relieved the State of its bur-
den of proving all of the elements of first-degree Sexual Offense by changing
the instruction from "serious bodily injury" to "serious personal injury";
that defense counsel had been ineffective for failing to seek the pre-trial
dismissal of the charge of Assault Inflicting Serious Bodily Injury, and for
misstating the facts during her opening statement; that the State's photo-
graphic and other evidence was fabricated, misleading and inaccurate; and that
his original sentence had been imposed in violation of State and federal law.

document # 9).

In addition, the petitioner filed a document captioned as a "Declaration In Opposition [To] Summary Judgment (document # 10), wherein he advised the Court of his desire to abandon claim eight as unsupported, and his desire to obtain review on only that portion of claim seven which challenges counsel's effectiveness as to a particular matter. Consequently, the only claims now pending before the Court are: (1) whether the evidence was sufficient to support the instruction and conviction for the Sexual Offense charge under a theory that the petitioner had inflicted "serious personal injury" upon the victim; (2) whether trial counsel was ineffective for failing to seek the pre-trial dismissal of the charge of Assault Inflicting Serious Injury; (3) whether counsel was ineffective for failing to ask the Court to advise the jury of the dismissal of such Assault charge; and (4) whether his conviction(s) were obtained by use of fabricated testimony and evidence.

The State has filed a Motion for Summary Judgment in opposition to the petitioner's claims, and the petitioner has filed his response to that Motion. Now, for its part, the Court has carefully reviewed the foregoing matters, along with the relevant federal precedent, and has determined that the petitioner cannot prevail on any of his remaining claims.

## II. <u>ANALYSIS</u>

## 1. __Standard of review for habeas petitions__.

Generally speaking, the standard of review to be applied by the Court to <u>habeas</u> cases is "quite deferential to the rulings of the state court." <u>Burch v. Corcoran</u>, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the <u>Burch</u> Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. §2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . ."

<u>Id</u>. (internal citations omitted).

The Supreme Court has explained that a State court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000), quoted in <u>Burch</u>.

An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may <u>not</u> issue the writ even if it concludes in its own independent review, that the relevant state

court merely made an incorrect or erroneous application of the correct federal principles.  Id.

The applicable standard of review is to be applied to "all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree."  Thomas v. Davis, 192 F.23d 445, 455 (4th Cir. 1999).  With these principles firmly in mind, this Court now directs its attention to the petitioner's claims.

### A.   **The petitioner's fourth claim must be rejected due to his procedural default of that issue**.

By his fourth claim, the petitioner argues that his convictions should be reversed due to the prosecutor's use of fabricated and/or misleading evidence.  A careful review of the record of this matter, however, reveals that the petitioner did not raise this claim during his direct appeal.  Rather, the first time that the petitioner raised this issue was on State collateral review in his MAR.  Not surprisingly, therefore, the State MAR court determined that the petitioner had procedurally defaulted this claim.

Critically, the Fourth Circuit Court of Appeals has determined that North Carolina's procedural default rule is an adequate and independent state ground precluding federal habeas review.  See Williams v. French, 146 F.3d 203, 209 (4th Cir.

13

1998), <u>cert. denied</u>, 525 U.S. 1155 (1999). Thus, in light of the petitioner's procedural default of this matter in State court and the State's assertion of such default as a defense, the petitioner cannot now obtain federal review of it unless he is able to fit into one of two narrowly drawn exceptions which would allow the Court to excuse his default. See <u>Fisher v. Angelone</u>, 163 F.3d 835, 844 (4th Cir. 1998).

To put it another way, this Court may review the petitioner's procedurally defaulted claim only if he can establish "cause" for the default <u>and</u> "actual prejudice" as a result of the alleged violation of federal law, or if he can establish actual innocence for the underlying offenses. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). This practice of federal courts rejecting procedurally defaulted claims ensures that <u>habeas</u> petitioners do not evade state procedural rules governing the review of criminal convictions. See <u>Lambrix v. Singletary</u>, 520 U.S. 518, 523 (1997).

To demonstrate "cause," a petitioner may show that the factual or legal basis for a claim "was not reasonably available" at the time the first challenge was made. <u>Mc Carver v. Lee</u>, 221 F.3d 583, 591 (4th Cir. 2000). To establish corresponding prejudice, a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire

trial with error of constitutional dimensions." Id. at 592.

In light of the MAR Court's treatment of this claim, the petitioner obviously was aware that procedural default would be an issue for him in this Court. Yet, the petitioner has not even attempted to establish "cause and prejudice" for his procedural default. Moreover, to the extent that his argument that certain testimony and/or evidence was false can be construed as an attempt to establish actual innocence, he has fallen far short of demonstrating that this Court's failure to consider the claim will result in a fundamental miscarriage of justice, i.e., that he actually, factually is innocent of the charges for which he has been convicted. Mackall v. Angelone, 131 F.3d 442, 446 n.7 (4th Cir. 1997). Therefore, the petitioner has failed to show that his procedural default should be excused under either of the two limited exceptions.

### B. **The petitioner's third claim is un-exhausted, and procedurally barred**.

As for his third claim, the petitioner argues that counsel was ineffective for having failed to ask the trial Court to advise the jury that the charge of Assault Inflicting Serious Injury had been voluntarily dismissed by the State during the jury's absence.

While a petitioner ordinarily is not required to raise an ineffective assistance of counsel claim like this one on direct appeal, this claim clearly should have been raised in the

petitioner's MAR during his pursuit of State collateral review. However, as the respondent contends and the record shows, the petitioner did <u>not</u> raise this precise claim against counsel during any of his State court proceedings. Rather, in his MAR, the petitioner argued that the <u>trial Court</u> had erred by failing to tell the jury of the status of the subject Assault charge. Therefore, this claim is unexhausted. <u>See</u> <u>Fisher v. Angelone</u>, 163 F.3d 835, 851 (4th Cir. 1998) (noting that a claim raised on the merits in state court cannot be asserted as an ineffective assistance of counsel claim in §2254 proceedings).

Moreover, when it is apparent that it would be futile to direct a petitioner to return to state court to exhaust his claim, such as when his prior procedural default would stand as a bar to any further review, the federal court must summarily dismiss the unexhausted claim if it is or would be deemed procedurally defaulted in the state court under an adequate and independent state rule. <u>See</u> <u>Baker v. Corcoran</u>, 220 F.3d 276, 288 (4th Cir. 2000); <u>and</u> <u>Bassette v. Thompson</u>, 915 F.2d 932, 937 (4th Cir. 1990). On this record, it is clear that the petitioner would be barred from State court review pursuant to the State's mandatory post-conviction procedural bar statute, N.C.G.S. §15A-1419(a)(3) and (b) (providing that a claim must be summarily dismissed when it was not raised at the first opportunity at which it could have been raised and there is no evidence of cause

and prejudice or actual innocence to excuse such failure).

Moreover, this statute is unambiguous and firmly established, and it does not depend upon a federal constitutional ruling. See Rose v. Lee, 252 F.3d 676 (4th Cir.) (noting that the subject provision is now mandatory under State law), cert. denied, 534 U.S. 941 (2001). Accordingly, based upon the foregoing review, this Court concludes that this claim against counsel must be rejected as procedurally defaulted.

     **C.**  **The State court's determination that the petitioner's Sexual Offense conviction was amply supported by the evidence cannot be disturbed**.

By his first claim, the petitioner argues that the trial court erred in instructing the jury that he could be found guilty under a theory that he had inflicted serious personal injury upon the victim because the evidence could not support such a finding. As the respondent correctly has noted, however, this claim already was rejected on the merits during both the petitioner's direct and collateral reviews in State court. Such decisions may not lightly be cast aside by this Court.

Indeed, it is clear under federal law that "[a] defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation omitted), citing Glasser v. United States, 315 U.S. 60, 80 (1942). Thus, a conviction must be affirmed if, "after reviewing the evidence in the

light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S.307, 319 (1979) (emphasis in original). To put it simply, reversal for insufficient evidence is reserved for the rare case "where the prosecution's failure is clear." <u>Burks v. United States</u>, 437 U.S. 1, 17 (1978).

North Carolina law does not expressly define "serious personal injury," but instead requires courts to determine whether such injury has been inflicted "according to the facts of each case." <u>North Carolina v. Lilly</u>, 117 N.C.App. 192, 194 (1994), <u>aff'd</u>, 342 N.C. 409 (1995). In <u>Lilly</u>, the Court agreed that a bruise to the victim's rectal area was a "serious personal injury." <u>Id</u>. at 194. Also included on the list of injuries meeting this test is a case involving a whiplash injury resulting in leg cramps and requiring two doctors' visits, <u>see North Carolina v. Ferguson</u>, 261 N.C. 558, 569 (1964); and a case involving a "mental injury," <u>see North Carolina v. Boone</u>, 307 N.C. 198, 2004 (1982).

On appeal, the State Court determined that the petitioner, in fact, had inflicted "serious personal injury" upon the victim. In support of that conclusion, the appellate Court pointed to the State's evidence of the victim's multiple injuries, <u>i.e.</u>, a swollen face, head, neck, and chest--all stemming from blows which

18

the petitioner landed with a full beer bottle in hand; to the
evidence of scars from bites to the victim's arm; and to the
victim's testimony concerning the attack and her ongoing night-
mares and therapeutic treatment.  Contrary to the petitioner's
unsupported assertion, this Court finds, on the above-cited
evidence, that the State Court's decision to uphold the Sexual
Offense conviction was not the result of an unreasonable deter-
mination of the facts.  Consequently, the State appellate Court's
decision will not be disturbed.  <u>Burch</u>, 273 F.3d at 583.

    D.  **The petitioner's second claim that counsel
was ineffective for having failed to seek
the pre-trial dismissal of the Assault charge
is feckless**.

By this claim--his final one--the petitioner argues counsel
was ineffective for having failed to seek the pre-trial dismissal
of the Assault charge which eventually was dismissed by the pro-
secutor.  The petitioner unsuccessfully raised this claim in his
MAR.

In any event, with respect to allegations of ineffective
assistance of counsel, a petitioner must show that counsel's
performance was constitutionally deficient to the extent it fell
below an objective standard of reasonableness, <u>and</u> that he was
prejudiced thereby.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-
91 (1984).  In making this determination, there is a strong
presumption that counsel's conduct was within the wide range of
reasonable professional assistance.  <u>Id</u>. at 689; <u>see also</u> <u>Fields</u>

v. Attorney Gen'l. of Md., 956 F.2d 1290, 1297-99 (4th Cir.),
cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d
1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065
(1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977),
cert. denied, 435 U.S. 1011 (1978).

To demonstrate prejudice, the petitioner must show a pro-
bability that the alleged errors worked to his "actual and
substantial disadvantage, infecting his trial with error of con-
stitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494
(1986), citing United States v. Frady, 456 U.S. 152, 170 (1982).
Under these circumstances, then, the petitioner "bears the burden
of proving Strickland prejudice." Fields, 956 F.2d at 1297,
citing Hutchins, 724 F.2d at 1430-31. Therefore, if the peti-
tioner fails to meet this burden, a "reviewing court need not
consider the performance prong." Fields, 956 F.2d at 1290,
citing Strickland, 466 U.S. at 697.

In the present case, the petitioner argues that in light of
the prosecutor's mid-trial concession that he could not "find a
basis, in the statute for the [Assault Inflicting Serious Injury]
offense," defense counsel should have been able to determine at
the pre-trial stage that this charge was "fraudulent[ly]" brought
by the prosecutor and, therefore, subject to pre-trial dismissal.

First, the prosecutor's statement that he found no basis for
the offense--which statement was made at the conclusion of all of

the evidence--falls far short of demonstrating that the charge was "fraudulent[ly]" brought.  Rather, such statement seems to be no more than an admission that the State had failed in its burden of producing evidence to support the submission of the charge to the jury.

Second, and more critically, as the respondent argues, the petitioner simply cannot demonstrate any prejudice in connection with this allegation.  That is, while it is clear that the subject Assault charge was dismissed, its joinder with the other charges did not prejudice the petitioner because most, if not all, of the evidence which was presented in support of this charge would have been submitted in support of the other two Assault charges. Consequently, the petitioner cannot establish that he was prejudiced by counsel's having not sought the pretrial dismissal of such charge.

### III.  <u>CONCLUSION</u>

The record here reflects that the petitioner has procedurally defaulted two of the four claims which he presented; and that he has failed to establish that such default should be excused.  Furthermore, the petitioner has failed to show an entitlement to relief on his other two claims.  Therefore, this Court finds that the respondent's Motion for Summary Judgment must be <u>granted</u>; and that this Petition must be <u>denied</u> and <u>dismissed</u>.

## IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. That the respondent's Motion for Summary Judgment is **GRANTED;** and

2. The petitioner's Petition for a Writ of Habeas Corpus is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: August 3, 2006

Graham C. Mullen
United States District Judge